**Reversed and Remanded and Majority and Concurring Opinions filed September 6, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00755-CV

---

## ROY PIPKIN EXECUTOR OF THE ESTATE ON BEHALF OF BAYON SHEA PIPKIN, Appellant

### V.

### KROGER TEXAS, L.P., Appellee

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2010-14137**

---

## MAJORITY OPINION

Appellant, Roy Pipkin Executor of the Estate on Behalf of Bayon Shea Pipkin (the Estate), appeals the summary judgment granted in favor of appellee, Kroger Texas, L.P., on the Estate's premises liability claim.[1] We reverse and remand.

---

[1] We note that some documents in the record also spell "Bayon" Shea Pipkin's name "Banyon" Shea Pipkin.

# I. BACKGROUND

On January 10, 2009, Bayon Shea Pipkin was shopping at a Kroger store with his minor son, Roman Pipkin, when he slipped and fell. On March 3, 2010, Shea Pipkin sued Kroger for premises liability, alleging that he had suffered a broken hip requiring surgery, and injuries to his head, neck, shoulder, leg, and spine. Shea Pipkin died of an unrelated medical condition on April 30, 2010, and his father, Roy Pipkin, became executor of the Estate.

On March 8, 2011, Kroger filed traditional and no-evidence motions for summary judgment. In its no-evidence motion for summary judgment, Kroger asserted that there was no evidence that (1) there was an unreasonably dangerous condition; (2) Kroger had actual or constructive notice of a condition; and (3) Kroger failed to reduce or eliminate the risk posed by a recently cleaned floor. In its traditional motion for summary judgment, Kroger contended that it had warned of the potential condition by placing the caution sign in a place where anyone could see it, and Kroger rendered the condition safe by cleaning the floor. Attached to Kroger's motion was the affidavit of its employee, Hamid Said, in which he stated, in relevant part:

> I was the clerk who cleaned aisle 19 before Mr. Pipkin ever fell, and I am the one who cleaned up a few pieces of ice that had fallen on the floor. I placed a caution sign at the specific location of the spill to warn others of potential hazards. After I cleaned the area, I left the caution sign in place as I always do and returned to my duties.

> I did not witness Mr. Pipkin fall, but did see him just after the fall. I noticed that my previously placed caution sign was just a few feet from him as he was kneeling on the floor. I would say the caution sign was less than five feet from Mr. Pipkin.

> Before [Mr.] Pipkin's fall, I had completely cleaned up the area, and I had no notice or suggestion that any slippery substance still existed on the floor after it was cleaned and there was no reason to suspect that any condition existed in this area. It is hard to imagine how a careful customer would slip under these circumstances.

2

On April 4, 2011, the Estate filed a response to Kroger's no-evidence summary judgment, complaining that the motion (1) was prematurely filed before an adequate time for discovery had elapsed; and (2) actually demonstrated that genuine fact issues exist on each element of the Estate's cause of action. The Estate did not respond to Kroger's traditional motion for summary judgment. Attached to the Estate's response to the no-evidence motion were Hamid Said's affidavit and the affidavit of Roy Pipkin, in which he stated:

> Our son Shea was gainfully employed at SouthPark Funeral Home at the time of his accident. He had no physical condition that would have caused him to fall. He had never had a slip and fall claim before or ever broken his hip before.
>
> I was told by my son Shea that he slipped and fell on a wet floor in Kroger and that [there] was no "wet floor" sign or caution cones displayed. They were apologetic for the wet floor.
>
> Shea was a careful and considerate young man, he was not clumsy. He was athletic and in good health. We believe that his fall was due to Kroger's floor being left wet and their failure to timely and adequately clean it up or at least put out a sign or cone to warn of the floor being wet. We went to the hospital and witnessed the pain and suffering this accident and the required surgery caused him for many months.

On April 8, 2011, Kroger filed its reply to the Estate's response. Kroger objected to Roy Pipkin's affidavit, arguing that the affidavit should be stricken because it violated the Dead Man's Rule found in Rule 601(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 601(b). Kroger also objected that the affidavit contained impermissible factual conclusions that were not supported by facts, and also contained impermissible hearsay evidence. Kroger further pointed out that the Estate's response did not address the traditional motion for summary judgment, but merely concluded that Hamid Said's affidavit created fact issues.

On May 10, 2011, the Estate filed a response to Kroger's no-evidence and traditional motions for summary judgment, attaching the first page of a four-page Kroger

3

Customer Incident Report, in addition to Hamid Said's affidavit and Roy Pipkin's affidavit.

On May 11, 2011, Kroger filed its objections to the Estate's response and summary judgment evidence, arguing that the Estate did not file its response and evidence at least seven days before the summary judgment hearing, and neither sought leave nor had the trial court's permission to late file the response and evidence. The summary judgment hearing was held on May 11, 2011.[2]

At the May 11, 2011 hearing, the trial court stated that the Dead Man's Rule was probably "the biggest hurdle," and asked the Estate's attorney, "do you have other evidence or do you anticipate you'll be able to get other evidence that the condition at the time was such that they didn't have — that the deceased didn't have adequate warning that there was an unsafe condition?" The Estate's attorney responded that he could corroborate Roy Pipkin's affidavit with the testimony of Shea Pipkin's son, who was at the store with him on the day of the accident. The Estate's attorney explained that he had not presented evidence from the deceased's son because he "was having difficulty working with the executor of the estate, as there was a lot going on after the death of Mr. Pipkin." Assuming that the Estate was not able to present any corroborating evidence, the Estate's attorney stated that "[u]nless there were any other facts, Your Honor, we would have to then concede under that circumstance" that the Estate probably would not be able to proceed with the case.

The trial court stated that it would give the Estate's attorney additional time to supplement the summary judgment evidence with an affidavit from Shea Pipkin's son that there was no warning sign, and that the court would "take that into consideration before ruling on the summary judgment." The trial court further stated:

---

[2] The summary judgment hearing, which had been originally set for April 11, 2011, was reset to May 2, 2011, and again to May 11, 2011.

As it stands now, the Court's inclined to grant the motion for summary judgment because I don't think you've provided any, anything that creates a fact issue in this case and, frankly, you've had enough time to secure this testimony. But since you are representing to this Court that this testimony existed, that you have had difficulties with your client because of what you seem to imply is a mental capacity or a deterioration of his ability to function, then I'll give you additional time.

So I'll hold the ruling on this in abeyance for a week. You'll be allowed to provide the supplement. You can put that in the form of the motion to supplement the summary judgment evidence. I'll give you an opportunity to respond to the affidavit, in the event that you feel it doesn't meet the requisite form, doesn't create a fact issue, notwithstanding. This is kind of a last chance.

*    *    *

It's in open court on the record. You'll have until next Monday to supplement.

On May 16, 2011, the Estate filed a second amended response to the no-evidence and traditional motions for summary judgment, attaching, in addition to the previously filed summary judgment evidence, all four pages of the Kroger Customer Incident Report and the affidavit of Shea Pipkin's minor son, Roman Pipkin, who stated:

I am the affiant and my name is Roman Pipkin, I am accompanied by my Mother Julie Pipkin who is over the age of eighteen and is competent. I Roman Pipkin, am of sound mind, and personally acquainted with the facts herein, and I am capable of making this affidavit.

I was present at the Kroger, prudently shopping with my father Bayon Shea Pipkin at the time of the slip and fall. There was water on the floor, and my father slipped and fell because of the wet floor. There was no caution "wet floor sign" displayed. My dad was seriously injured and he had to go to the hospital due to this injury. My dad's hip bone broke as a result of this slip and fall.

Although the second amended response bears a file stamp showing that it was filed on May 16, 2011, the district clerk returned it to the Estate's attorney because it was not electronically filed pursuant to the 129th District Court's standing order requiring

that, as of March 1, 2010, all documents not electronically filed would be returned to the filing party.

On May 18, 2011, Kroger filed objections to the affidavit of Roman—a twelve-year-old minor—on the grounds that he was incompetent to provide an affidavit, he did not have personal knowledge of the subjects about which he testified, and the affidavit made impermissible factual and legal conclusions. Kroger also complained that the Estate still had not filed a motion for leave and had not obtained the trial court's written permission to late file the affidavit.

On June 15, 2011, the trial court signed the order granting Kroger's motion for final summary judgment, without specifying whether it was granting on the traditional or no-evidence motion or the grounds.

On June 28, 2011, the Estate electronically filed its second amended response to Kroger's traditional and no-evidence motions for summary judgment and evidence. On July 12, 2011, the Estate filed a motion for reconsideration and/or new trial, asserting that its failure to supplement the record was based "on a clerical error committed in the filing of evidence the Court requested." The Estate stated that it filed its second amended response on May 16, 2011, but one of the Estate's attorneys claimed that he was not aware of the trial court's electronic filing requirement and the court clerk returned the second amended response and evidence. The Estate's attorney "first learned that the documents had been returned for e-filing and that the Court granted Summary Judgment on June 22, 2011."

Kroger responded to the Estate's motion for reconsideration, asserting that the Estate had not filed Roman's affidavit by the trial court's deadline and had failed to obtain written leave to "re-late-file" the affidavit; the trial court had necessarily sustained Kroger's objections to Roman's affidavit; and the trial court's standing electronic filing order had been in effect since March 1, 2010, before the filing of the suit.

6

On August 15, 2011, the trial court held a hearing on the Estate's motion for reconsideration and/or new trial. The trial court denied the motion on the ground that Roman's affidavit was not timely filed or competent. In its issue in this appeal, the Estate asserts that it raised genuine issues of material fact to defeat summary judgment.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

We review the trial court's granting of a summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam). We first review the trial court's no-evidence summary judgment under the standards of Rule 166a(i).[3] *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). In reviewing a no-evidence summary judgment, we review the evidence in the light most favorable to the respondent against whom the summary judgment was rendered. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). If the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, then the trial court cannot properly grant the no-evidence motion for summary judgment. *Smith*, 288 S.W.3d at 424. If the nonmovant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movant's proof satisfied the Rule 166a(c) burden.[4] *Ford Motor Co.*, 135 S.W.3d at 600.

---

[3] TEX. R. CIV. P. 166a(i).

[4] TEX. R. CIV. P. 166a(c).

To be entitled to summary judgment under Rule 166a(c), a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant and resolve any doubt in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848. Because the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any theories advanced are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

## III. TIMELINESS OF THE FILING OF THE ESTATE'S SUMMARY JUDGMENT EVIDENCE

### A. The Trial Court's Granting of Leave to Late-File Affidavit

Kroger admits that the trial court granted the Estate leave at the May 11, 2011 hearing to supplement its summary judgment evidence with the affidavit of Shea Pipkin's son, but argues that the Estate did not file its second amended response and Roman's affidavit until June 28, 2011. In its May 18, 2011 objections to the Estate's summary judgment evidence, Kroger argued that the Estate had failed to obtain *written* leave from the trial court to late-file Roman's affidavit.

We agree with Kroger that the trial court did grant the Estate leave to late file Roman's affidavit. However, we conclude that such leave was not required to be written.

The deadline to file summary judgment evidence is not later than seven days prior to the day of the hearing, unless the court grants leave of court. *See* TEX. R. CIV. P. 166a(c) ("[e]xcept on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response"). Where nothing appears in the record to indicate that late-filed summary judgment

evidence was filed with leave of court, we presume that the trial court did not consider it. *INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985). Thus, we presume on appeal that a silent record means that the trial court did not grant leave. *See Basin Credit Consultants, Inc. v. Obregon*, 2 S.W.3d 372, 374 (Tex. App.—San Antonio 1999, pet. denied) (holding that, when the trial court considers a motion for new trial after summary judgment is granted, it may only consider the record as it existed prior to the granting of the summary judgment).

On the other hand, "[p]ermission to file a response late may be reflected in a separate order, a recital in the summary judgment, or an oral ruling contained in the reporter's record of the summary judgment hearing." *Neimes v. Ta*, 985 S.W.2d 132, 138 (Tex. App.—San Antonio 1998, pet. dism'd) (citing TIMOTHY PATTON, SUMMARY JUDGMENTS IN TEXAS § 2.02[2] (1996)); *see also Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 620–21 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). The record must contain an affirmative indication that the trial court permitted the late filing of the response. *Neimes*, 985 S.W.2d at 138.

Here, the reporter's record reveals that trial court expressly granted the Estate leave at the May 11, 2011 hearing to file the affidavit of Shea Pipkin's son "until next Monday," or May 16, 2011. Appellant filed the second amended response, with Roman's affidavit attached, with the Harris County District Clerk on May 16, 2011.[5] However, the District Clerk returned it to the Estate's attorney because it was not electronically filed pursuant to the 129th District Court's order requiring that, as of March 1, 2010, all documents not electronically filed would be returned to the filing party. The Estate re-filed the second amended response electronically on June 28, 2011, after the trial court's June 15, 2011 order granting summary judgment in favor of Kroger. The record does not

---

[5] The Estate interprets the trial court's oral order as providing it a week, or until May 18, 2011, to file Roman's affidavit. Whether the trial court intended to allow the Estate until May 16 or May 18 to file the affidavit is not material because the Estate would have met either deadline by filing the affidavit on May 16, 2011.

9

show (1) that the trial court considered the evidence attached to the Estate's Second Amended Response or (2) that in granting summary judgment the trial court considered this evidence to have been filed by May 16, 2011. In addition, at the August 15, 2011 hearing on the Estate's motion for reconsideration and/or new trial, the trial court stated that it had determined that the Estate had not filed timely Roman's affidavit. Thus, in order to determine whether the Estate met the deadline established by the trial court, we must determine whether the Estate "filed" the affidavit on May 16, 2011, as reflected by the District Clerk's file stamp, or on June 28, 2011, when it ultimately complied with the trial court's standing e-filing order.

## B. Whether The Affidavit Was Timely Filed

The Estate urges that we determine the affidavit was "filed" on May 16, 2011, when it filed a hard copy of the document because the 129th District Court's standing mandatory e-file order requirement is contrary to the Texas Rules of Civil Procedure.[6] Specifically, the Estate urges that the trial court's standing order is ineffective to alter the date it filed a hard copy of the affidavit because the order does not comport with Texas Rule of Civil Procedure 3a. We agree.

Under Texas Rule of Civil Procedure 3a, no local rule, order, or practice of any court may be applied to determine the merits of any matter other than local rules and amendments which fully comply with all requirements of Rule 3a. TEX. R. CIV. P. 3a(6). Kroger argues that trial court's e-filing order was not determinative of the merits because the trial court found that Roman's affidavit was not only untimely, but is not competent summary judgment evidence. However, as addressed in Section IV, below, Roman's affidavit is competent summary judgment evidence. Therefore, if the affidavit is

---

[6] Kroger asserts that the Estate waived this complaint by not raising it in the trial court. But this court must determine whether the affidavit was timely filed summary-judgment evidence that this court must consider in reviewing the trial court's summary judgment. The Estate's failure to assert in the trial court that the trial court's standing e-file order conflicts with the Texas Rules of Civil Procedure does not prevent this court from addressing this issue in determining whether this evidence was filed within the extension of time granted by the trial court.

competent summary judgment evidence and the e-filing order nullified the filing of this affidavit on May 16, 2011, making this evidence untimely, then the trial court's standing e-file order is outcome determinative. Because this order is outcome-determinative, it must be a local rule or amendment to a local rule that complies with all requirements of Rule 3a. TEX. R. CIV. P. 3a(6). Presuming that this order could be generally considered a local rule, it would have to, among other things, not be inconsistent with the Texas Rules of Civil Procedure and be approved by the Supreme Court of Texas. TEX. R. CIV. P. 3a.

The "Standing Order of the 129th District Court Regarding Electronic Filing" is not a local rule, nor was it approved by the Supreme Court of Texas. It states, in relevant part:

> 1. DESIGNATION OF E-FILE CASES
>
> IT IS HEREBY ORDERED that as of **Monday, March 1, 2010**, all cases in the 129th District Court, shall be, and hereby are, designated electronic filing ("e-file") cases. It is the intent of this Court that this Order shall conform with the Harris County Local Rules of the District Courts Concerning the Electronic Filing of Court Documents while still mandating the electronic filing of documents in all cases, except as otherwise designated in Section 3 of this Order.[7]
>
>          *      *      *
>
> 3. NO PAPER FILINGS RECEIVED; EXCEPTIONS
>
> IT IS FURTHER ORDERED that the District Clerk shall not accept any petitions, applications, pleadings, or other documents whatsoever in e-file cases in paper form, except for filings by *pro se* parties or parties expressly granted a waiver, by signed written order of this Court. If the District Clerk receives a paper filing in an e-file case, the District Clerk is ORDERED to return the paper filing to the purported filler [sic] with a notification that the case is to be e-filed and that no filings may be accepted, filed-stamped, or scanned.
>
> THE EXCEPTIONS to the types of documents that must be electronically filed are contained in Section 3.3 of the Harris County Local Rules of the

---

[7] Emphasis in original.

11

District Courts Concerning the Electronic Filing of Court Documents, and include only: i) citations or writs bearing the seal of the court; ii) returns of citations; iii) bonds; iv) subpoenas; v) proofs of service of subpoenas; vi) documents to be presented to a court *in camera*, solely for the purpose of obtaining a ruling on the discoverability of such documents; vii) documents sealed pursuant to an express order under Rule 76a of the Texas Rules of Civil Procedure; and viii) documents to which access is otherwise restricted by law or court order, including a document filed in a proceeding under Chapter 33 of the Family Code. *Tex. Fam. Code Ann. §33.001, et seq.* (Vernon 2009). It is ORDERED that these documents shall continue to be filed as paper filings.

129th (TEX.) STANDING ORDER REGARDING ELECTRONIC FILING.

Although the 129th District Court's standing mandatory e-file order "intends" to conform with the approved Harris County Local Rules, it is actually contrary to those rules. Rule 3.3 of the "Local Rules of the District Courts Concerning the Electronic Filing of Court Documents" provides:

(a) A document that can be filed in a traditional manner with the district clerk may be electronically filed with the exception of the following documents:

i) citations or writs bearing the seal of the court;

ii) returns of citation;

iii) bonds;

iv) subpoenas;

v) proof of service of subpoenas;

vi) documents to be presented to a court in camera, solely for the purpose of obtaining a ruling on the discoverability of such documents;

vii) documents sealed pursuant to TEX. R. CIV. P. 76a; and

viii) documents to which access is otherwise restricted by law or court order, including a document filed in a proceeding under Chapter 33, Family Code.

12

(b) A motion to have a document sealed, as well as any response to a motion may be electronically filed.

HARRIS (TEX.) CIV. DIST. CT. LOC. R. CONCERNING THE ELECTRONIC FILING OF CT. DOCUMENTS 3.3.

Rule 3.3 of the Harris County District Courts Local Rules on e-filing clearly makes the e-filing of documents permissive as it provides that "[a] document that can be filed in a traditional manner *may be electronically filed.*" *Id.* (emphasis added). The trial court's e-file order makes e-filing a mandatory requirement.[8] By making the e-file requirement mandatory, the trial court's standing order is plainly contrary to the Harris County District Courts Local Rules. Because this order is not a local rule or amendment to a local rule that complies with all requirements of Rule 3a, this order may not be applied to determine the merits of any matter and may not be used to make the filing of a hard copy of summary-judgment evidence on May 16, 2011, ineffective. *See* TEX. R. CIV. P. 3a. The Estate also argues that the 129th District Court's standing mandatory e-file order is ineffective to alter the date of the Estate's traditional filing because the effect of the order is to eviscerate Texas Rules of Civil Procedure 21 and 74. We agree.

Rule 21 of the Texas Rules of Civil Procedure, entitled "Filing and Serving Pleadings and Motions," provides, in relevant part, that "[e]very pleading, plea, motion or application to the court for an order, whether in the form of a motion, plea or other form of request, unless presented during a hearing or trial, shall be filed with the clerk of the court in writing." TEX. R. CIV. P. 21. Rule 74, entitled "Filing With Court Defined," further provides, in relevant part, that "[t]he filing of pleadings, other papers and exhibits as required by these rules shall be made by filing them with the clerk of the court." TEX. R. CIV. P. 74. "Generally, 'an instrument is deemed in law filed at the time it is left with the clerk, regardless of whether or not a file mark is placed on the instrument and

---

[8] To date, the Texas Judicial Council reports approved mandatory e-filing rules of two courts: the Supreme Court of Texas, itself, by September 12, 2011 order (Misc. Docket No. 11-9152) and this court, the Fourteenth Court of Appeals, by December 12, 2011, order. (Misc. Docket No. 11-9254). *See February 2012 Director's Report,* Texas Judicial Council. All other rules make e-filing permissive.

regardless of whether the file mark gives some other date of filing.'" *Warner v. Glass*, 135 S.W.3d 681, 684 (Tex. 2004) (per curiam) (quoting *Standard Fire Ins. Co. v. LaCoke*, 585 S.W.2d 678, 680 (Tex. 1979)); *see also Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex. 1994) (per curiam) ("In a long line of cases, this court has held that a document is 'filed' when it is tendered to the clerk, or otherwise put under the custody or control of the clerk."). The purpose of this rule is to protect a diligent party from being penalized by the errors and omissions of the court clerk. *Biffle v. Morton Rubber Indus., Inc.*, 785 S.W.2d 143, 144 (Tex. 1990) (per curiam).

Texas courts have long recognized that a document left with the court clerk is "deemed in law filed" whether or not the clerk actually places a file mark on the document. *See Warner*, 135 S.W.3d at 684; *Jamar*, 868 S.W.2d at 319. Neither the rules nor case authority permit the clerk to un-file a document that does not comply with an e-file order. Neither the rules nor case authority permit a trial court to contradict uniform Texas rules or binding case authority regarding when a document is deemed "filed." Under the Texas Rules of Civil Procedure, the Estate filed the affidavit on May 16, 2011—within the trial court's deadline. The documents bear the clerk's file stamp. Even without a file stamp, the Estate did all that was required.

Finally, Kroger asserts that the Estate's claim of ignorance of the trial court's e-file order does not excuse its late filing of the affidavit. Kroger points out that the Estate had routinely e-filed its documents in this case. Kroger argues that the 129th District Court's e-file order presumes notice of its requirements where it requires that the plaintiff "shall ensure that all parties . . . are aware of the existence of this Order and must be capable of demonstrating by competent evidence of notice to all other parties." Kroger contends that the Estate's co-counsel cannot overcome the presumption of notice.

However, because we hold that application of the 129th District Court's standing e-file order to delay the date Roman's affidavit is "deemed filed" is outcome-determinitive and contrary to the Texas Rules of Civil Procedure and the Harris County

14

District Courts Local Rules on e-filing, the Estate was not required to overcome any presumption that it had notice of the trial court's mandatory e-file requirement. Moreover, because the 129th District Court's standing e-file order is contrary to the Texas Rules of Civil Procedure and the Harris County District Court Local Rules, this order may not be applied to determine the merits of any matter. Thus, the Estate filed timely Roman's affidavit on May 16, 2011, as evidenced by the District Clerk's file stamp.[9]

## IV. ROMAN PIPKIN'S AFFIDAVIT

Having determined that the Estate filed Roman's affidavit within the time limit established by the trial court's order granting leave, we must determine whether it is competent summary judgment evidence. Kroger objected to Roman's affidavit on the stated grounds that (1) Roman was not competent to testify because he is a minor; (2) Roman did not have personal knowledge of the subjects about which he testified; and (3) the affidavit made impermissible factual and legal conclusions. A summary judgment affidavit must be based on personal knowledge, contain facts that would be admissible at trial, and show that the affiant is competent to testify. TEX. R. CIV. P. 166a(f). We review a trial court's decision to exclude or admit summary judgment evidence for an abuse of discretion. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied); *Blake v. Dorado*, 211 S.W.3d 429, 431–32 (Tex. App.—El Paso 2006, no pet.).

---

[9] The Estate relies on the Kroger Customer Incident Report it attached to its amended and second amended responses to Kroger's motions for summary judgment to raise material fact issues on the elements of the slip-and-fall claim. Kroger maintains that the trial court never granted the Estate leave to late-file the report and, therefore, the report was neither before nor considered by the trial court when granting the summary judgment. As addressed below, we need not decide whether the report was timely filed or properly before the trial court because Roman's affidavit and Hamid Said's affidavit are sufficient to raise material fact issues, precluding summary judgment. Moreover, with respect to Roy Pipkin's affidavit, which Kroger objected to as violating the Dead Man's Rule, because the Estate does not rely on the affidavit in this appeal and Roman's affidavit and Said's affidavit are sufficient to raise material fact issues, we need not address whether Kroger preserved its objection by securing a trial court ruling regarding whether the affidavit violates the Dead Man's Rule, or whether it raises any material fact issues to preclude summary judgment.

15

## A. Roman's Status as a Minor

Relying on Texas Rule of Evidence 601(a)(2), Kroger objected that Roman "is a 12 year old minor (he was 10 years old at the time of the slip), who is incompetent to provide an affidavit."[10]  Kroger argued that, because the affidavit must affirmatively show that the witness is competent to testify about matters in the affidavit and "the affiant must be over the age of 18 and of sound mind[,] . . . minors are incompetent to make affidavits."  At the August 15, 2011 hearing on the Estate's motion for reconsideration and/or new trial, Kroger reasserted its contention that Roman was not competent to testify under Rule 601(a)(2) because he is a minor.  With regard to Roman's status as a minor, the trial court stated:

> [M]y primary concern, which I do share with you is that we have a minor here and, obviously, he didn't write this out.  And there is an issue of comprehension and if he understands what exactly it is he's attesting to, and I do have a problem with that and, as you stated, that it was produced for litigation in this context.

On appeal, the Estate argues that Roman is not per se barred from testifying because he is a minor.  We agree.[11]  Rule 601(a)(2) provides with respect to minors:

> **(a) General Rule.**  Every person is competent to be a witness except as otherwise provided in these rules.  The following witnesses shall be incompetent to testify in any proceeding subject to these rules:
>
> \*     \*     \*
>
> (2) *Children.*  Children or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated.

---

[10] *See* TEX. R. EVID. 601(a)(2).

[11] The Estate appears to agree with Kroger that in making its objection to Roman's affidavit based on his status as a minor Kroger asserted a substantive defect.  However, because we conclude that it was not shown in the trial court that Roman was incompetent to make an affidavit, we need not decide whether Kroger's objection that Roman is not competent to make an affidavit because he is a minor is a defect in form or substance.

TEX. R. EVID. 601(a)(2). Thus, under Rule 601, a child is considered competent to testify unless, after the child is examined by the court, it appears to the court that the child does not possess sufficient intellect to relate transactions about which he will testify. *Rodriguez v. State*, 345 S.W.3d 504, 507 (Tex. App.—Waco 2011, pet. ref'd). There is no age below which a child is automatically deemed incompetent to testify. *Escamilla v. State*, 334 S.W.3d 263, 265 (Tex. App.—San Antonio 2010, pet ref'd). When a trial court determines whether a child is competent to testify at trial, it considers (1) the competence of the child to observe intelligently the events in question at the time of the occurrence; (2) the child's capacity to recollect the events; and (3) the child's capacity to narrate the facts. *Id.*; *Davis v. State*, 268 S.W.3d 683, 699 (Tex. App.—Fort Worth 2008, pet. ref'd).

Rule 601(a)(2) provides for the court to examine the child when determining that the child is not competent to testify. TEX. R. EVID. 602(a)(2). Here, the trial court found "an issue of comprehension" and questioned whether Roman "understands what exactly it is he's attesting to" *without* examining Roman. Kroger cites no authority that a child is per se prohibited from making an affidavit. Although not controlling, case law from other intermediate appellate courts permits affidavits from minors in the context of family law cases. *See In re D.R.G., III*, No. 04-05-00439-CV, 2006 WL 3611156, at *4 (Tex. App.—San Antonio Dec. 13, 2006, no pet.) (mem. op. on reh'g) (rejecting appellant's contention that minor son was not competent to make affidavit indicating his choice of managing conservator under Section 153.008 of the Texas Family Code).[12]

Leaving discretion to the trial court to determine competency on a case-by-case basis—but after examination of the minor—is a rule of reason. The bright-line rule urged

---

[12] Section 153.008, which was repealed effective September 1, 2009, provided that "A child 12 years of age or older may file with the court in writing the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child subject to the approval of the court." *See* Act of May 27, 2003, 78th Leg., R.S., ch. 1036, § 5, 2003 Tex. Gen. Laws 2987, 2988, *repealed by* Act of May 29, 2009, 81st Leg., R.S., ch. 1113, § 31, 2009 Tex. Gen. Laws 3056, 3072, *and by* Act of May 29, 2009, 81st Leg., R.S., ch. 1118, § 10, 2009 Tex. Gen Laws 3078, 3082.

by Kroger is illogical and would surely lead to manipulation. If no minor could provide affidavit testimony, no minor could testify at trial. After all, neither the Texas Rules of Civil Procedure nor the Texas Rules of Evidence establish a higher level of proof or a greater level of witness competency for summary judgment practice. Kroger's rule allows for no distinction by age or maturity.

Under the circumstances of this case, Kroger has not shown that Roman was incompetent to testify solely because he is a minor. To the extent that the trial court rejected Roman's affidavit as incompetent, it was error to do so on this record. Therefore, in the absence of any showing to the contrary, Roman was competent to make the affidavit.

### B. Personal Knowledge

Kroger also objected that Roman did not have personal knowledge of the subjects about which he testified. Kroger complains that Roman's being "personally acquainted with the facts herein" is not sufficient to show that the affidavit is based on "personal knowledge." An affidavit not based on personal knowledge is legally insufficient. *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (per curiam). However, an affidavit does not need to specifically state that it is made on personal knowledge if the statements in the affidavit show the affiant was speaking from personal knowledge. *Bloyed v. Gen. Motors Corp.*, 881 S.W.2d 422, 434 (Tex. App.—Texarkana 1994), *aff'd*, 916 S.W.2d 949 (Tex. 1996); *Closs v. Goose Creek Consol. Indep. Sch. Dist.*, 874 S.W.2d 859, 868 (Tex. App.—Texarkana 1994, no writ); *Krueger v. Gol*, 787 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (op. on reh'g); *see also Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (holding that it was "clear from reading the entire affidavit" that the affiant was testifying from personal knowledge); *Youngblood v. U.S. Silica Co.*, 130 S.W.3d 461, 468–69 (Tex. App.—Texarkana 2004, pet. denied) (holding affidavits were based on personal knowledge even though affidavits did not state that they were based on "personal knowledge"). The mere

recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not positively show a basis for the knowledge. *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Coleman v. United Savs. Ass'n of Tex.*, 846 S.W.2d 128, 131 (Tex. App.—Fort Worth 1993, no writ) (explaining that requirement that an affidavit be made on personal knowledge is satisfied by an affirmative showing in the affidavit of how the affiant became personally familiar with the facts so as to be able to testify as a witness, "not by a self-serving recitation by the affiant that she has 'personal knowledge'").

Kroger contends that, even if the affidavit need not recite that the affiant has personal knowledge, the affidavit must explain how the affiant has personal knowledge. *See Valenzuela*, 317 S.W.3d at 553. Statements represented in the affidavit need factual specificity such as place, time, and exact nature of the alleged facts. *Id.* "'The key is whether the affidavit clearly shows the affiant is testifying from personal knowledge.'" *Id.* (quoting David Hittner & Lynn Liberato, *Summary Judgments in Texas State and Federal Practice*, 46 Hous. L. Rev. 1379, 1438 (2010)).

Thus, Kroger argues that Roman's affidavit lacks the specificity required to show that he is testifying from personal knowledge. However, we find that Roman's affidavit is based on personal knowledge. Roman states that he "was present at Kroger" and was "shopping with [his] father" when his father slipped and fell. This is sufficient to show that Roman is testifying from personal knowledge.[13]

## C. Legal and Factual Conclusions

Kroger also objected in the trial court to Roman's affidavit on the stated grounds that it contained impermissible legal and factual conclusions and did not recite facts. A conclusory statement does not provide the underlying facts to support the conclusion.

---

[13] The Estate appears to agree with Kroger that an objection to an affidavit based on lack of personal knowledge asserts a substantive defect. However, because we have determined that Roman's affidavit is based on personal knowledge, we need not decide whether Kroger's objection based on lack of personal knowledge is a defect in form or substance.

*Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). A conclusory statement may set forth an unsupported legal conclusion or unsupported factual conclusion. *S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 856 (Tex. App.—Dallas 2011, no pet.); *Choctaw Props., L.L.C. v. Aledo Indep. Sch. Dist.*, 127 S.W.3d 235, 242 (Tex. App.—Waco 2003, no pet.). Conclusory affidavits are not sufficient to raise fact issues because they are not credible or susceptible to being readily controverted. *Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam). Objections that statements in an affidavit are conclusory assert defects of substance, which may be raised on appeal for the first time. *S & I Mgmt., Inc.*, 331 S.W.3d at 856; *Rockwall Commons Assocs., Ltd.*, 331 S.W.3d at 507.

Kroger argues that the following statements in Roman's affidavit are factual conclusions because they are unsupported by facts: "[t]here was water on the floor" and "no caution . . . sign was displayed." Kroger argues that the affidavit recites no facts indicating what exactly Roman observed at the time or where he was in relation to the area in question or his father. We do not agree that these statements are factual conclusions. Roman states that he was present at the Kroger, he was shopping with his father, there was water on the floor, and there was "no caution 'wet floor sign' displayed." We conclude that these statements are sufficient to state facts which could be rebutted. *See Rivera v. White*, 234 S.W.3d 802, 808 (Tex. App.—Texarkana 2007, no pet.) (holding that, although all of the affiant's statements were "to some degree conclusory, each furnishe[d] some factual information that could have been rebutted" and, therefore, were not merely conclusory, but contained enough underlying facts to support a summary judgment award).

Kroger further asserts the statement that Roman and his father were shopping "prudently" is a legal conclusion because it is unsupported by facts. We agree. However, even disregarding the word "prudently" leaves the remainder of the affidavit, and we have rejected Kroger's contention that the cited statements in Roman's affidavit

20

amount to factual conclusions. We conclude that the remainder of Roman's affidavit is competent summary judgment evidence.

## V. NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

The Estate argues that the summary judgment evidence was properly before the trial court and raised a genuine issue of material fact that precluded summary judgment.

To prevail in a slip-and-fall case, the plaintiff must prove (1) the owner had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm; (3) the owner did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm; (4) the owner's failure to use reasonable care to reduce or eliminate the unreasonable risk of harm proximately caused the plaintiff's injuries. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (per curiam); *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998).

### A. Notice of an Unreasonably Dangerous Condition

The existence of actual or constructive knowledge of a premises defect is a threshold requirement for a premises liability claim. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996) (per curiam). A slip-and-fall plaintiff satisfies the notice element by establishing that (1) the defendant placed the substance on the floor; (2) the defendant actually knew that the substance was on the floor; or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002).

Kroger contends that the Estate presented no evidence that Kroger knew or should have known of the condition. The Estate attached the affidavit of Hamid Said to its original, timely-filed response to Kroger's no-evidence motion for summary judgment. Said stated that he had cleaned up "a few pieces of ice that had fallen on the floor," had "completely cleaned the area," and "had no notice or suggestion that any slippery substance still existed on the floor after it was cleaned and there was no reason to suspect

that any condition existed in this area." Moreover, if the movant attaches evidence to its no-evidence motion for summary judgment, the trial court may not consider the evidence unless it creates a question of material fact. *Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). Kroger submitted Hamid Said's affidavit "[i]n support of its No-Evidence Motion for Final Summary Judgment."

Kroger's own employee claimed to have just cleaned up "a few pieces of ice that had fallen on the floor" and placed "a caution sign at the specific location of the spill to warn others of potential hazards." Therefore, we conclude that Kroger's own summary judgment evidence raised a material fact issue on whether it had notice of an unreasonably dangerous condition, i.e., the wet floor.[14]

## B. Existence of an Unreasonably Dangerous Condition

A condition is not unreasonably dangerous simply because it is not foolproof. *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006). A condition is unreasonably dangerous if it presents an unreasonable risk of harm. *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (per curiam). "A condition poses an unreasonable risk of harm for premises-defect purposes when there is a 'sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)); *see also Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex. 1975) ("Whether a condition constitutes a danger is a function of reasonableness. That is, if the ordinarily prudent man could foresee that harm was a likely result of the condition, then it is a danger."). Because this definition precludes a definitive, objective test, the

---

[14] Kroger argues that the Estate presents no argument on appeal regarding notice. Grounds of error not asserted by point of error in the court of appeals are waived. *Jacobs v. Satterwhite*, 65 S.W.3d 653, 665–66 (Tex. 2001) (per curiam). We conclude that the Estate did not waive the notice element on appeal. As Kroger admits in its brief, the Estate argues that "reasonable knowledge of the danger" is "readily shown by even Kroger's documents." As addressed, Kroger's own summary judgment evidence raised a material fact issue on whether Kroger had notice of an unreasonably dangerous condition.

22

extent to which a condition is unreasonably dangerous is ordinarily a fact question. *Christus Health Se. Tex. v. Wilson*, 305 S.W.3d 392, 397 (Tex. App.—Eastland 2010, no pet.). However, whether a condition is unreasonably dangerous may be determined as a matter of law. *Id.*

A foreign substance on a floor can be an unreasonably dangerous condition. *See, e.g., Brookshire Grocery Co.*, 222 S.W.3d at 409 (observing that the unreasonably dangerous condition was "the ice on the floor"); *H.E. Butt Grocery Co. v. Resendez*, 988 S.W.2d 218, 218–19 (Tex. 1999) (per curiam) (holding that the grape on which the plaintiff slipped was the dangerous condition); *City of San Antonio v. Rodriguez*, 931 S.W.2d 535, 536–37 (Tex. 1996) (per curiam) (holding that, on retrial, the jury should be instructed that the unreasonably dangerous condition was water on the floor); *Lopez v. Regent Care Ctr.*, No. 04-09-00529-CV, 2010 WL 3700180, at *3 (Tex. App.—San Antonio Sept. 22, 2010, pet. denied) (mem. op.) (stating that the relevant dangerous condition was the liquid soap on the mat on which the plaintiff slipped and fell).

Roman stated that "there was water on the floor." Kroger argues that Roman's affidavit was not before the trial court. However, we have already concluded that Roman's affidavit was filed timely and is competent summary judgment evidence. Moreover, Said attested in his affidavit that he had cleaned up "a few pieces of ice" and placed a caution sign "at the specific location of the spill to warn others of potential hazards." We conclude that a material fact issue exists as to whether there was an unreasonably dangerous condition.[15]

---

[15] Relying on Said's affidavit, in which he testified that he had completely cleaned the floor and placed a caution sign at the specific location of the spill, Kroger argues evidence that the floor was damp or wet after it was cleaned does not negate the fact that Kroger warned Shea Pipkin of the potential hazard. As addressed below, we conclude that Roman's affidavit raised a material fact issue on whether a caution or warning sign was placed near the location where Said cleaned the spill.

## C. Discharge of Duty to Keep Premises Safe

The owner or occupier of the premises has a duty to keep the premises under his control in a safe condition. *Bill's Dollar Store, Inc. v. Bean*, 77 S.W.3d 367, 369 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985)). The owner or occupier discharges this duty by warning the invitee of unreasonable risks of harm either known to the owner or which would be known to him by reasonable inspection or by making the premises reasonably safe. *Id.*

Kroger contends that the Estate presented no evidence that it failed to exercise reasonable care. Said testified in his affidavit that he had completely cleaned up the spill and placed a caution sign in the specific location of the spill. A sign to warn others of "potential hazards" would not have been necessary if the area Said had "completely cleaned" posed no further hazard. Moreover, Roman testified in his affidavit that "[t]here was water on the floor" and "[t]here was no caution 'wet floor sign' displayed." Applying the proper summary judgment standards, we conclude that the Estate has raised an issue of material fact as to whether Kroger discharged its duty by making the unreasonably dangerous condition safe or warning Shea Pipkin of the condition. As such, we further conclude that the trial court erred in granting Kroger's no-evidence motion for summary judgment.

## VI. TRADITIONAL MOTION FOR SUMMARY JUDGMENT

Kroger contends that the trial court properly granted its traditional motion for summary judgment because Kroger conclusively established through the uncontroverted testimony of Said that it discharged its duty of reasonable care as a matter of law by posting a caution sign warning of a potential hazard. However, Roman's affidavit, in which he testified that no caution sign was displayed, raises a material fact issue. Again, Kroger asserts that the Estate could have controverted Said's testimony but failed to do so with either timely filed or competent summary judgment evidence. As previously addressed, Roman's affidavit was both timely filed and competent summary judgment

evidence. We conclude that the trial court erred in granting Kroger's traditional motion for summary judgment. We sustain the Estate's issue.

Having sustained the Estate's sole issue on appeal, we reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.

/s/          Sharon McCally
                                 Justice

Panel consists of Justices Frost, McCally, and Mirabal.[16] (Mirabal, J., concurring).

---

[16] Senior Justice Margaret Garner Mirabal sitting by assignment.