**Affirmed and Memorandum Opinion filed February 4, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00025-CV

---

## GARY MARTIN, PERSONAL REPRESENTATIVE OF THE ESTATE OF MARGIE T. MARTIN, Appellant

## V.

## CHICK-FIL-A, HWY 59 AT KIRBY DRIVE, Appellee

---

### On Appeal from the 295th District Court
### Harris County, Texas
### Trial Court Cause No. 2009-63074

---

## M E M O R A N D U M   O P I N I O N

In this trip-and-fall premises liability case, appellant Margie Martin contends that the trial court erred when it granted summary judgment in favor of the appellee. Because we conclude that the condition on the premises did not pose an unreasonable risk of harm as a matter of law, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Martin initially sued Chick-Fil-A, Inc. and Jesse Chaluh dba Chick-Fil-A HWY 59 at Kirby Drive in Houston, Harris County, Texas. Martin asserted negligence, gross negligence, and premises liability causes of action. Martin subsequently nonsuited Chick-Fil-A, Inc. Martin raises only the premises liability cause of action on appeal.

On February 4, 2009, Martin and her son met for lunch at the Chick-Fil-A restaurant owned by Chaluh and located on the frontage road of the Southwest Freeway near Kirby Drive. The restaurant has two drive-thru lanes that run north to south from the feeder road. The drive-thru lanes are separated by two types of lane dividers: yellow dome-style bumps and yellow concrete parking blocks. Customers who use the parking lot must cross the drive-thru lanes using a clearly marked pedestrian crosswalk in order to enter the restaurant. The parking blocks are perpendicular to the crosswalk. There are no lane dividers within the boundaries of the crosswalk. From a north-facing vantage point, the eastern drive-thru lane is defined by the restaurant on the right and the lane dividers on the left. The western drive-thru lane is defined by lane dividers on both the right and the left. Both lanes share a set of lane dividers. Thus, if a patron deviates from the crosswalk, he must contend with potentially two sets of lane dividers. The parking block at issue in this case is located on the western side of the western drive-thru lane and is placed adjacent to the north side of the crosswalk.

Martin and her son entered the restaurant through the west entrance at approximately 11:30 a.m. Martin and her son used the pedestrian crosswalk and arrived without incident. After lunch, Martin and her son exited the restaurant heading west towards the parking lot. When Martin and her son left the restaurant, the drive-thru lanes were crowded, and the line of cars stretched into the frontage

2

road. Some cars were blocking parts of the pedestrian crosswalk. Martin and her son safely traversed the eastern drive-thru lane using the pedestrian crosswalk, but a car was blocking the crosswalk in the western drive-thru lane. Rather than wait for the crosswalk to clear, Martin followed her son and a group of people away from the crosswalk and into the western drive-thru lane. This meant that the group of pedestrians, including Martin and her son, would have to navigate one of the parking blocks. The group and Martin's son safely passed the obstacle, but Martin tripped on the concrete lane divider, fell, and suffered a knee injury.

Chaluh filed both a traditional and a no-evidence motion for summary judgment. The trial court granted the motion without specifying the grounds. Martin timely appealed.

## SUMMARY JUDGMENT STANDARD OF REVIEW

We review a trial court's granting of a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 662 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A no-evidence motion for summary judgment is basically a motion for pretrial directed verdict and is governed by the standards of Texas Rule of Civil Procedure 166a(i). *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Pipkin*, 383 S.W.3d at 661–62. Under rule 166a(i), after an adequate time for discovery, the party without the burden of proof can move for summary judgment on the ground that the nonmovant has presented no evidence supporting one or more element essential to the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The nonmovant must then present more than a scintilla of probative evidence that raises a genuine issue of material fact supporting each element contested in the motion. *See id.*; *Timpte Indus., Inc.*, 286 S.W.3d at 310 (Tex.

3

2009); *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *Forbes Inc.*, 124 S.W.3d at 172; *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Less than a scintilla of evidence exists if the evidence creates no more than a mere surmise or suspicion of a fact regarding a challenged element. *Forbes Inc.*, 124 S.W.3d at 172; *Mendoza*, 276 S.W.3d at 655. "We review the evidence . . . in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *see Pipkin*, 383 S.W.3d at 662. If the nonmovant satisfies its burden of production on the no-evidence motion, then the trial court cannot properly grant the summary judgment. *Pipkin*, 383 S.W.3d at 662. If the nonmovant does not satisfy its burden of production on the no-evidence motion, there is no need to analyze whether the movant satisfied its traditional summary judgment burden. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Pipkin*, 383 S.W.3d at 662.

To be entitled to a traditional summary judgment, the movant must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life*, 128 S.W.3d at 216; *Pipkin*, 383 S.W.3d at 662. When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubt in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661. Because the trial court's order in this case does not specify the grounds for summary judgment, we must affirm if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life*,

4

128 S.W.3d at 216; *Pipkin*, 383 S.W.3d at 662.

## DISCUSSION

Both parties concede that Martin was an invitee. Therefore, to prevail in this "trip and fall" case, Martin must prove (1) that a condition on Chaluh's premises posed an unreasonable risk of harm; (2) that Chaluh knew or reasonably should have known of the danger; (3) that Chaluh breached its duty by failing to adequately warn or by failing to make the condition reasonably safe; and (4) that Chaluh's breach proximately caused Martin's injuries. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010); *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex. 2007) (per curiam); *Pipkin*, 383 S.W.3d at 670.

The key issue in this case is whether the concrete parking block posed an unreasonable risk of harm. Absent that element, the cause of action must fail. Martin argues that "more than a scintilla of evidence existed that the Parking Block posed an unreasonable risk of harm" and that the unreasonable-risk-of-harm element should not be determined as a matter of law because it is intrinsically fact based. We disagree on both counts. As discussed below, the evidence presented by Martin to prove that the condition posed an unreasonable risk of harm did no more than create a mere surmise or suspicion of its existence, and as a result, Martin effectively presented no evidence. *See Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 755 (Tex. 1970). Furthermore, courts have held as a matter of law that a condition did not pose an unreasonable risk of harm. *See Brinson Ford*, 228 S.W.3d at 163; *Seideneck*, 451 S.W.2d at 755; *Wong v. Tenet Hosps. Ltd.*, 181 S.W.3d 532, 539 (Tex. App.—El Paso 2005, no pet.). This determination, however, must be made on a case-by-case basis. *See Brinson Ford*, 228 S.W.3d at 163 ("[T]he ramp at issue *in this case* did not pose an unreasonable risk of harm.") (emphasis added); *Pipkin*, 383 S.W.3d at 671 (whether a condition is unreasonably

5

dangerous is ordinarily fact question but may be determined as a matter of law); *Wong,* 181 S.W.3d at 539 ("The determination of whether a particular condition poses an unreasonable risk of harm is generally fact specific.").

A condition that presents an unreasonable risk of harm is "one in which there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Seideneck*, 451 S.W.2d at 754. A condition is not unreasonably dangerous simply because it is not foolproof. *Brinson Ford*, 228 S.W.3d at 163. A premises owner is not the insurer of its invitees. *Id.* at 162. In assessing whether a condition posed an unreasonable risk of harm—that is, whether a harmful event was probable and foreseeable—courts have considered the following factors:

(1) Whether the condition was clearly marked. *See, e.g.*, *id.* at 163 (pedestrian ramp was outlined in yellow stripping, which was a common method for indicating elevation change).

(2) The height of the condition. *See, e.g.*, *id.* (pedestrian ramp was only four inches high, less than the height of an average step).

(3) Whether any injuries had occurred in the past. *See id.*; *Seideneck*, 451 S.W.2d at 754 (evidence of other falls attributable to the condition is probative but not conclusive); *see, e.g.*, *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767–68 (Tex. App.—San Antonio 2011, no pet.) (because depressions in aggregate walkway had existed for over eighteen years and plaintiff had presented no evidence of other falls or complaints attributable to the condition, the condition was not unreasonably dangerous); *Christus Health Se. Tex. v. Wilson*, 305 S.W.3d 392, 396 (Tex. App.—Eastland 2010, no pet.) (testimony revealed that people had fallen off the unpainted curbs in the garage).

6

(4) Whether any other invitees had complained about the condition. *See Brinson Ford*, 228 S.W.3d at 163; *see, e.g.*, *Dietz*, 398 S.W.3d at 767–68.

(5) Whether the condition or object at issue was unusual as compared to other objects in the same class. *See, e.g.*, *Seideneck*, 451 S.W.2d at 754 (plaintiff presented no evidence that a "regular pile" rug with decorative fringe and tassels was "unusual").

(6) Whether the construction or placement of the condition would serve as a warning that the object presented the prohibited degree of danger. *See id.*, 451 S.W.2d at 754; *see, e.g.*, *Christus Health*, 305 S.W.3d at 398 (because parking garage curb was not painted, invitees could not perceive elevation change).

(7) Whether the invitee had reasonable alternatives other than to traverse areas where the condition was located. *See Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 520 (Tex. 1978) (addressing an invitee's own negligence); *see, e.g.*, *Zimmerman v. Farias*, No. 14-12-00531-CV, 2013 WL 5026248, at *7 (Tex. App.—Houston [14th Dist.] Sep. 12, 2013, no pet.) (mem. op.) (plaintiff safely navigated x-ray machine wires in dental operating room but complained that ultrasonic scaler's wires, which were also located in the dental operating room, posed an unreasonable risk of harm).

(8) Whether the condition met applicable safety standards. *See Brinson Ford*, 228 S.W.3d at 163.

In *Brinson Ford*, the plaintiff stepped off a pedestrian ramp, mistakenly believing that the ramp ended when the ramp's railings ended. 228 S.W.3d at 162.

7

The highest point of the unrailed section was four inches above the sidewalk. *Id.* The edges of the ramp were painted yellow, and the ramp met applicable safety standards. *Id.* at 162–63. The defendant had no record that anyone had ever fallen in the ten years since the business opened, nor had the defendant ever received complaints about the ramp's safety. *Id.* at 163. The defendant moved for both a no-evidence and a traditional summary judgment. *Id.* at 162. The trial court did not specify the grounds for granting the summary judgment, and the Texas Supreme Court ultimately held that the plaintiff had presented no evidence that the condition posed an unreasonable risk of harm. *Id.* at 161, 163.

After reviewing the facts of this case and applying the factors above, we conclude that Martin has presented no evidence that the parking block presented an unreasonable risk of harm. We address each factor in turn. First, like the ramp in *Brinson Ford*, the parking block in this case is clearly marked with yellow paint. Second, the height of the parking block was not unreasonable. In *Brinson Ford*, "[t]he highest point of the downward-sloping unrailed portion of the ramp was . . . less than the height of an average step." *Id.* at 163. Similarly, in this case, the parking block is, according to Martin, "almost the height of a step." And according to Chaluh's affidavit, the parking block is "no higher than a stair step." Third, prior to the incident involving Martin, no customer had ever tripped or fallen on the parking blocks. Fourth, prior to the incident involving Martin, Chaluh had not received any complaints about the safety of the parking blocks. Fifth, while these parking blocks are typically seen in parking spaces, Martin has not presented any evidence that Chaluh's use of the parking blocks is unusual. Additionally, we do not perceive anything unusual about the parking block at issue in this case as compared to similar parking blocks. Sixth, the construction and placement of the parking block do not suggest that it presented the prohibited degree of danger.

8

Given that the parking block was placed outside the pedestrian crosswalk and that it was in relatively close proximity to the dome-style lane dividers, Martin has not presented any evidence that the construction or placement of the parking block presented the prohibited degree of danger or that Chaluh would have discovered the danger had he conducted a formal survey of the premises for dangerous conditions. *See Seideneck*, 451 S.W.2d at 754–55. Seventh, Martin had a reasonable alternative. She could have remained in the pedestrian crosswalk and waited for it to clear, which is what she did when she and her son first entered the restaurant. Instead, according to her deposition testimony, Martin followed a crowd of people that deviated from the crosswalk, and she did not look down at the ground to see whether she might encounter any obstacles.

With regard to the eighth and final factor, Martin argues that the parking block fell below the safety standards prescribed by the American Society for Testing and Materials (ASTM). We are unable to consider whether this evidence would satisfy Martin's burden because the ASTM document explaining the safety standards was attached to the appellate brief as an appendix and did not appear in the appellate record. *See* Tex. R. App. P. 34.1; *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 n.2 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Ramex Const. Co. v. Tamcon Servs. Inc.*, 29 S.W.3d 135, 138 (Tex. App—Houston [14th Dist.] 2000, no pet.); *Am. Online, Inc. v. Williams*, 958 S.W.2d 268, 275 n.4 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Therefore, Martin has not presented any evidence that the parking block fell below applicable safety standards.

In total, the factors weigh heavily in favor of Chaluh. Martin has not met her rule 166a(i) burden to "produce . . . evidence raising a genuine issue of material fact." Tex. R. Civ. P. 166a(i). Martin has only shown that she tripped on the

9

cement block and fell, and the mere happening of an accident is not evidence that there was an unreasonable risk of such an occurrence. *Thoreson v. Thompson*, 431 S.W.2d 341, 344 (Tex. 1968); *see Gannett Outdoor Co. v. Kubeczka*, 710 S.W.2d 79, 87 (Tex. App.—Houston [14th Dist.] 1986, no writ). At most, Martin's evidence did nothing more than create a mere surmise or suspicion that the cement block presented an unreasonable risk of harm.

## CONCLUSION

Having concluded that Martin did not meet her burden to overcome the no-evidence summary judgment, we need not determine whether Chaluh met his traditional summary judgment burden. The judgment of the trial court is affirmed.


/s/    Marc W. Brown
        Justice

Panel consists of Justices Christopher, Donovan, and Brown.