**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00288-CV**

_____

**LAMAR UNIVERSITY, Appellant**

**V.**

**DEBORAH HANINGTON, Appellee**

_____

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. A-201,727**

_____

**MEMORANDUM OPINION**

In an accelerated appeal, Lamar University appeals the denial of its plea to the jurisdiction. In three issues, Lamar challenges the trial court's judgment arguing first, the trial court abused its discretion in denying its plea to the jurisdiction by failing to consider all its evidence properly before the trial court, second, that Hanington failed to show a waiver of Lamar's sovereign immunity under the Texas Tort Claims Act (TTCA), and third, Hanington cannot plead a premises defect claim

1

and proceed on her general negligence claim in the same suit. We reverse the trial court's judgment and dismiss the case for lack of jurisdiction.

## I. Background

In plaintiff's original petition, Hanington states that in December 2017, she was a resident of Gentry Hall, a dormitory on the campus of Lamar University. Hanington was moving out of her dorm room for winter break, and alleged that she slipped and fell, and was subsequently injured by water accumulated on the floor from a water fountain located in her dormitory lobby.

In her first amended petition, Hanington alleges negligence and that her injuries were proximately caused by the negligence of Lamar through the acts of its servants or employees. She argues that Lamar owed a duty to her as an invitee on its premises, including using ordinary care to reduce or eliminate an unreasonable risk of harm created by the premises condition of the leaking water fountain of which Lamar was or should have been reasonably aware. Hanington contends that because Lamar failed to exercise ordinary care to protect her as an invitee, including failing to monitor the fountain, and warn Hanington of the dangerous condition, it caused her resulting injuries and damages. Hanington also alleges waiver of immunity under the TTCA, arguing "[a] premises defect arose from a condition of real property and Defendant would, were it a private person, be liable to Plaintiff under Texas law. Plaintiff further pleads that all notice provisions required under Tex. Civ. Prac. &

2

Rem. Code § 101.001 have been satisfied." Hanington seeks damages in the amount of at least $1,000,000 for past and future physical pain and mental anguish, past and future physical impairment, past and future disfigurement, and past and future medical expenses.

Lamar filed an original answer, a first amended original answer, and denied all allegations. In its First Amended Original Answer, Lamar asserts, among other things, a general denial, exemption and limitation of liability under TTCA, that the trial court lacks jurisdiction due to sovereign immunity, and that Hanington was contributorily negligent. Lamar also filed a plea to the jurisdiction arguing "Defendant University is entitled to sovereign immunity from suit and from liability, and Plaintiff's Original Petition failed to allege adequate grounds to establish a waiver of such sovereign immunity; therefore, the court is without jurisdiction to hear this cause of action and the same should be dismissed with prejudice."

Hanington responded to Lamar's plea to the jurisdiction arguing Lamar's plea in both its original answer and amended answer are "general and generic." Specifically, she argues that Lamar failed to give notice of "how or where Defendant attacks Plaintiff's pleadings." As such, she cannot be afforded the opportunity to amend to cure a jurisdictional defect in her pleadings. Additionally, Hanington argues that Lamar's immunity is waived under section 101.021(2) of the Texas Civil

3

Practices and Remedies Code, as this was a premises defect that arose on real property owned by Lamar, and "[a] governmental unit . . . is liable for [] personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unity would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). This waiver applies to a governmental unit's duty to an invitee on its property.

In response, Lamar filed a "Brief in Support of Its Plea to the Jurisdiction and Motion to Dismiss" alleging in greater detail its argument that Hanington failed to prove jurisdiction under the TTCA. Attached to the brief were thirteen exhibits, including Hanington's original pleading, depositions from Hanington and personnel at Lamar University, a video of inspection of the fountain, and Hanington's answers to interrogatories.

In her response, Hanington argues that Lamar's brief was improper, and that Lamar was attempting to introduce a no evidence summary judgment improperly in a brief and supplant Rule 166a of the Texas Rules of Civil Procedure requiring any summary judgment request to be filed 21 days before the hearing. Hanington also objected to one affidavit and requested in the alternative to replead.

In September 2021, the trial court held a hearing regarding Lamar's Plea to the Jurisdiction and signed an order denying Lamar's plea to the jurisdiction. Lamar appealed.

4

## II. Issue One

In its first issue, Lamar claims that the trial court refused to consider the brief with exhibits timely filed and argued at the hearing on the motion to dismiss. We note that the order under review states "After considering the pleadings and *briefs* on file herein…." (emphasis added). To the extent the issue which has been raised in is doubt, we will discuss whether the trial court erred if it did not consider all of Lamar's evidence presented with its brief regarding its plea to the jurisdiction. Lamar argues that its plea to the jurisdiction and supporting evidence by way of a trial brief was properly before the trial court because "Texas law requires the courts to consider all of Lamar University's immunity arguments and relevant jurisdictional evidence." At the hearing, Hanington argued that Lamar could not supplement its plea to the jurisdiction with a brief. Hanington asserted the brief filed by Lamar amounted to an evidentiary challenge, without a proper plea of an evidentiary challenge, and for that reason, Lamar cannot supplement its plea to the jurisdiction adding an evidentiary challenge without proper pleadings.

Governmental units, including municipalities, are immune from suit unless the State consents. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004)). There is a "heavy presumption in favor of immunity[,]" and a

5

statutory waiver of sovereign immunity must be "clear and unambiguous[.]" *See* Tex. Gov't Code Ann. § 311.034; *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction over a case. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000); *Pineda v. City of Houston*, 175 S.W.3d 276, 279 (Tex. App.—Houston [1st Dist.] 2004, no pet.).We review the trial court's ruling on a plea to the jurisdiction under a de novo standard of review. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, a trial court's review "mirrors that of a traditional summary judgment motion." *Garcia*, 372 S.W.3d at 635.The trial court must take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If there is a fact issue on jurisdictional issue, the trial court must deny the plea. *Id*. at 227-28. But if the evidence is undisputed or if the plaintiff failed to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228. The plaintiff bears the burden to allege facts that affirmatively demonstrate that the trial court has subject-matter jurisdiction. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 446 (Tex. 1993). Additionally, if a plea to the jurisdiction challenges the existence of jurisdictional facts, a court considers

6

relevant evidence submitted by the parties to resolve the jurisdictional issues. *See Miranda*, 133 S.W.3d at 227. In a case in which the jurisdictional challenge also implicates the merits of the plaintiff's cause of action, the trial court reviews the relevant evidence to determine whether a fact issue exists. *See id*. If the governmental entity's evidence demonstrates that the plaintiff's jurisdictional allegations are not true, the burden shifts back to the plaintiff to offer evidence disputing the government's evidence. *See Clark*, 544 S.W.3d at 805. If the evidence creates a fact issue on the jurisdictional issue, the trial court cannot grant the plea, and the fact issue must be decided by the factfinder.[1] *See Miranda*, 133 S.W.3d at 227-28. But if the relevant evidence is undisputed or fails to raise a fact question in jurisdiction, the trial court rules on the plea to the jurisdiction as a matter of law. *See Miranda*, 133 S.W.3d at 228.

"We recognize that the nature of a pleading is determined by its substance, not by its format or caption." *McPherson v. Wylie*, No. 10-15-00419, 2016 WL 7325461, *3 n.2 (Tex. App.—Waco Dec. 14, 2016, no pet.) (mem. op.) (The court could not "conclude, however, that Appellants were asserting a motion for summary judgment based on immunity from liability and not a plea to the jurisdiction based

---

[1] Because a trial court rules on a plea to the jurisdiction as a matter of law and it may not grant a plea to the jurisdiction if there are genuine issues of material fact regarding jurisdiction, findings of fact are not proper. *See Schmitz v. Denton Cty. Cowboy Church,* 550 S.W.3d 342, 352 (Tex. App.—Fort Worth 2018, pet. denied) (mem. op. on reh'g).

on immunity from suit."); *see also Schronk v. City of Burleson*, 387 S.W.3d 692, 702 (Tex. App.—Waco, 2009, pet. denied) (comparing Tex. R. Civ. P. 166a(c)) ("There is no rule specifying the manner in which a party must present evidence in support of a plea to the jurisdiction. Although summary-judgment practice may provide a useful analytical framework, there is no rule requiring that evidence be attached to a plea to the jurisdiction to be considered by a trial court."). We therefore construe Lamar's brief to supplement its plea to the jurisdiction and the trial court was required to consider this evidence. *See Biermeret v. The Univ. of Tex. Sys.*, No. 2-06-240-CV, 2007 WL 2285482, *2 (Tex. App.—Fort Worth Aug. 9, 2007, pet. denied) (mem. op.) (If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do.); s*ee also Bland Indep. Sch. Dist.*, 34 S.W.3d at 555 (confining the evidentiary review to evidence that is relevant to the jurisdictional issue); *see also Harris Cnty. v. Luna–Prudencio*, 294 S.W.3d 690, 695-96 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Univ. of Tex. MD Anderson Cancer Ctr. v. Simpson*. No. 01-20-00679-CV, 2021 WL 3083104, *3-4 (Tex. App.—Houston [1st Dist.] no pet.) (mem. op.) (analyzing arguments made in a plea to the jurisdiction together with the plea to the jurisdiction and supplemental brief in support of the plea to the jurisdiction).

Additionally, Hanington's argument that we cannot consider Lamar's brief is not persuasive considering the fact she was offered a continuance and declined Lamar's offer for a continuance and appeared ready for the hearing regarding Lamar's plea to the jurisdiction. See e.g., *Hawk v. Wallace*, No. 02-21-00044-CV, 2022 WL 60736, *5 n.3 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.) (citations omitted).

We sustain Lamar's first issue to the extent that the trial court failed to consider the evidence presented before the court, including the arguments and evidence in Lamar's supplemental brief, when ruling on the plea to the jurisdiction.

## III. Issue Two

After finding that Lamar's brief in support of its plea to the jurisdiction was proper and should have been considered by the trial court, we move to Lamar's second issue. In its second issue, Lamar argues that the trial court erred by denying its plea to the jurisdiction because Hanington failed to identify any evidence that showed a disputed fact that the fountain was a dangerous condition, that Lamar had actual or constructive knowledge of the alleged premises defect, or any evidence to prove a waiver of immunity under the TTCA.[2]

---

[2] We note that neither party disputes that this is premises defect claim. *See generally Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380 (Tex. 2016).

9

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland, Indep. Sch. Dist.*, 34 S.W.3d at 554. The plea challenges the trial court's jurisdiction over the subject matter of a pleaded cause of action. *Miranda*, 133 S.W.3d at 226. Subject matter jurisdiction is a question of law. As a result, an appellate court conducts a de novo review of a trial court's ruling on a plea to the jurisdiction. *Id.* A defendant may use a plea to the jurisdiction to challenge whether the plaintiff has met her burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See id.* at 226-27. When "evidence is presented with a plea to the jurisdiction, the court reviews the relevant evidence and may rule on the plea as a matter of law if the evidence does not raise a fact issue on the jurisdictional question, a standard that generally mirrors the summary-judgment standard." *Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798 (Tex. 2016) (citing *Miranda,* 133 S.W.3d at 227–28).

"A governmental unit . . . is liable for [] personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). In premises liability cases, "the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (citing

10

*M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295-96 (Tex. 1983)); Tex. Civ. Prac. & Rem. Code Ann. § 101.022 (discussing the duty owed by a government unit if the claimant pays for the use of the property). The parties agree that Hanington was an invitee. "[A] person is treated as an invitee if she 'pays for use of the premises.'" *City of Fort Worth v. Posey*, 593 S.W.3d 924, 929 (Tex. App.—Fort Worth 2020, no pet.) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a)). A property owner or occupier in a premises liability case owes an invitee a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier of land knows about or in the exercise of ordinary care should know about. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998); *Austin v. Kroger Tex., L.P.,* 465 S.W.3d 193, 202 (Tex. 2015).

The parties do not dispute that Hanington asserts a premises liability claim. *See Austin*, 465 S.W.3d at 216 ("When an injury arises from a premises condition, it is often the case that any resulting claim sounds exclusively in premises liability[.]"). The elements of a cause of action for a premises liability claim are: (1) the existence of a condition of the premises creating an unreasonable risk of harm, (2) the landowner knew or should have known of the existence of the condition, (3) the landowner failed to use reasonable care to reduce or eliminate the risk by rectifying or warning of the condition, and (4) such failure was a proximate cause of

11

plaintiff's injury. *Henkel v. Norman*, 441 S.W.3d 249, 251-52 (Tex. 2014); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).

"Many building materials will, over time, deteriorate and require repair or replacement. That does not necessarily mean that the owner or occupier has created a dangerous condition or that the owner has actual or constructive knowledge of a dangerous condition. For example, we know that asphalt roads will develop potholes over time and will require repair. That does not mean that asphalt roads constitute an unreasonable risk of harm from the day they are constructed." *Daenen*, 15 S.W.3d at 101. "A condition is unreasonably dangerous if it presents an unreasonable risk of harm." *Pipkin v. Kroger Texas, L.P.,* 383 S.W.3d 655, 671 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citation omitted). The extent to which a condition is unreasonably dangerous is ordinarily a fact question, but under some facts and circumstances, may be determined as a matter of law. *See id*. "'A condition presenting an unreasonable risk of harm is one in which there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *Reliable Consultants, Inc. v. Jaquez*, 25 S.W.3d 336, 341 (Tex. App.—Austin 2000, pet. denied) (quoting *Seideneck v. Cal Bayreuther & Assocs*., 451 S.W.2d 752, 754 (Tex. 1970)).

"A condition is not unreasonably dangerous simply because it is not foolproof." *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006).

12

There is no definitive, objective test that may be applied to determine whether a specific condition presents an unreasonable risk of harm. *See Seideneck*, 451 S.W.2d at 754. When determining whether the harmful event that resulted from a condition was probable and foreseeable, courts often consider, among other things, evidence of other falls or injuries attributable to the same condition and evidence of some defective condition causing the fall; and, such evidence is probative but not conclusive. *See id.* Courts may consider (1) whether the condition was clearly marked, (2) the height of the condition, (3) whether injuries had occurred in the past, (4) whether other invitees had complained about the condition, (5) whether the condition was unusual, (6) whether the construction or placement of the condition would serve as a warning that the object presented a prohibited degree of danger, (7) whether the invitee had reasonable alternatives other than to go through the area where the condition was located, and (8) whether the condition met applicable safety standards. *See Martin v. Chick-Fil-A*, No. 14-13-00025-CV, 2014 WL 465851, at *4, (Tex. App.—Houston [14th Dist.] Feb. 4, 2014, no pet.) (mem. op.); *see also Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (holding pedestrian ramp was not unreasonably dangerous because it was outlined in yellow stripping, which was a common method to indicate elevation change); *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767-68 (Tex. App.—San Antonio 2011, no pet.) (holding that summary judgment was proper because there was no evidence of

13

unreasonable risk of harm where condition—depressions in a sidewalk—had been present for eighteen years with no prior falls or complaints); *Farrar v. Sabine Mgmt. Corp.*, 361 S.W.3d 694, 701 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Evidence of a similar injury or complaint caused by the condition is probative on the question of whether the condition posed an unreasonable risk of harm.").

In this case, there was no evidence presented by Hanington that there was a dangerous condition or that Lamar University had actual or constructive knowledge that the fountain was leaking.

**A. Dangerous Condition**

First, the presence of a fountain in the entry hall of the dormitory is not in itself a dangerous condition. *See Culotta v. DoubleTree Hotels, LLC*, No. 01-18-00267-CV, 2019 WL 2588103, at *4 (Tex. App.—Houston [1st Dist.] June 25, 2019, pet. denied) (mem. op.) (finding "fountains were open and obvious conditions on the premises[]"). Lamar attached Hanington's deposition where she testified on the day she slipped and fell that she had made "four complete passes[]" or "two trips" back and forth to her room while moving out of the dorms for winter break. During those trips, she observed a worker and sheets lying around the fountain, but not underneath it. She testified she did not see water on the floor. Hanington stated that she did not see the size of the water puddle and there were no wet substances on her clothes after she fell. The fact that Hanington fell does not itself constitute evidence of an

14

unreasonably dangerous condition. *See Mangham v. YMCA of Austin*, 408 S.W.3d 923, 928 (Tex. App.—Austin 2013, no pet.); *Bostick v. Metro Nat'l Corp.*, No. 14-04-00663-CV, 2005 WL 1981306, at *5, (Tex. App.—Houston [14th Dist.] Aug. 18, 2005, no pet.) (mem. op.) (concluding that claimant failed to produce evidence to defeat no-evidence summary judgment and rejecting inference that claimant's injuries were caused by dangerous condition merely because claimant fell). Consequently, Hanington failed to establish that the fountain was a dangerous condition.

## B. Actual or Constructive knowledge.

To succeed on a premises liability claim, an invitee must prove the following elements: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner or occupier's failure to use such care proximately caused the plaintiff's injury. *Daenen*, 15 S.W.3d at 99. "Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time." *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414-15 (Tex. 2008). For actual knowledge, courts generally consider whether the premises owner had received reports of prior injuries or reports

15

of the potential danger presented by the condition. *Univ. of Tex–Pan Am. v. Aguilar*, 251 S.W.3d 511, 514 (Tex. 2008). Constructive knowledge, however, can be established by facts or inferences that a dangerous condition could develop over time. *Stewart,* 249 S.W.3d at 415.

In its brief supporting the plea to the jurisdiction, Lamar asserts that

[Hanington's] version of facts does not meet the legal standard because she has produced no evidence that on the day in question, that the alleged water fountain was a dangerous condition or that [Lamar] had actual or constructive knowledge of an unreasonably dangerous condition that existed on premises. There is no evidence that the water fountain in question was a greater danger than one would encounter with other water fountains. There is no evidence that [Lamar] University employees placed the water on the floor or of similar accidents in Gentry Hall for at least five years before [Hanington's] accident. Even though [Hanington] merely speculates that she slipped on water, the alleged water on the floor was inconspicuous even to [Hanington] before and after her fall and she has produced no evidence of the length of time the alleged water existed on the floor prior to her fall.

In her first amended petition, Hanington alleges that she slipped and fell as a result of water "accumulated beneath a leaking water fountain." However, she does not allege any facts that demonstrate Lamar had actual or constructive knowledge of water leaking from the fountain.

Lamar attached deposition evidence to its brief in support of its plea to the jurisdiction, including the following excerpts from Hanington's deposition:

Q. I want to direct your attention to before and ask you how do you believe the water got on the floor?

16

A. I don't know how the water got there.

Q. Do you have any reason to believe that an employee of Lamar University put the water on the floor?

A. I don't know.

Q. Okay. And do you have any reason to believe that?

A. I can't make assumptions of things I don't know.

In its brief to support its plea to the jurisdiction, Lamar also attached the deposition of Mary Atkinson, director of Housing and Residential Life at Lamar University.

Q: Where is your office?

A: Gentry Hall.

Q: Okay. So how much of your time do you spend in Gentry Hall?

A: Probably at least 80 percent of my time.

Q: Do you know my client, Deborah Hanington?

A: No.

Q: To whom do you report?

A: Vice President Dr. Vicki McNeil, Vice President for Student Engagement.

Q: Can you tell me a little bit about the reporting protocol once there's been an incident in a residence hall?

…

17

A: [ATKINSON] What do you mean by "incident"?

Q: [HANINGTON'S ATTORNEY] Well, I mean an incident like an accident due to some defect in the premises, something like what happened to Ms. Hanington. What's the reporting protocol following that incident?

…

Q: Director Atkinson observed what appeared to be water in the cracks of the floor tile near the water fountain. Is that accurate?

A: Yes.

Q: Do you know where that water came from?

A: No.
Q: Was it your impression at that time that Ms. Hanington had slipped in that water?

…

A: I don't know.

Q: [HANINGTON'S ATTORNEY]: Can you describe to me – or do you remember how much water was in the floor cracks? Was it a puddle? Was it droplets?

A. It was a small amount. It was not a puddle.

Q. Okay. But you did observe water on the floor near where Ms. Hanington sustained her injuries?

A: I observed what appeared to be water.

Q: Did Ms. Hanington tell you that she had slipped in water?

A: No.

Q: Did anyone tell you that Ms. Hanington had slipped in water?

18

A: I don't recall.

…

Q. [H]ow are you familiar with Lansdale Painting & Drywall?

A. I know that they do work at Lamar.

Q. Were they doing work in Gentry Hall on the day of Ms. Hanington's accident?

A. Yes.

Q: Okay. So on the second page of this statement given by Joseph Thomas Rye, Jr., on the fourth line down, it reads (reading) : While I was working, a white male of mid 20s to mid 30s gathered water from the water fountain and spilled some into the walkway. Do you see that?

A. Yes.

…

Q: [HANINGTON'S ATTORNEY] Okay. Since your time as the Director for Housing and Residence Life, do you recall any other complaints about water leaking from that water fountain in Gentry Hall?

A: [LAMAR'S ATTORNEY]: Objection, form. Are you talking about before or after the accident? It's just unlimited.

Q: [HANINGTON'S ATTORNEY]: First, I'll start with before. Are you aware of any complaints that have occurred prior to Ms. Hanington's accident of water leaking from that water fountain in Gentry Hall?

A: No.

Q: Post Ms. Hanington's accident, are you aware of any complaints about water leaking from that water fountain in Gentry Hall?

A. Could you clarify what you mean by "complaints"?

Q. Were you informed at any time that there was water leaking from the water fountain in Gentry Hall after Ms. Hanington's accident?

A. Yes.

…

Q: Were there – did you receive any complaints about any accidents happening because of that water leaking from the water fountain in Gentry Hall?
A. No
…

Q: So you spend a lot of time in Gentry Hall because your office is there; correct?

A. Correct.

Q: Have you ever personally witnessed water leaking from that water fountain in Gentry Hall?

A. No.

Q: So you've never noticed that water accumulated under the fountain due to normal usage?

…

A. No.

…

20

Q: Have there ever been any discussion of placing antislip mats under that water fountain to catch any water accumulation?

A. No.

Q: Are you aware of any litigation that has arisen regarding slip-and-fall accidents in Gentry Hall?

A. No.

Lamar also attached the depositions of the security guard of Gentry Hall dormitory, who stated that he works eight hour shifts in weekly rotations in the dormitory and has never noticed water accumulating under the fountain, nor was he aware of any complaints about the fountain.

In addition, Lamar attached evidence from David Martin, Lamar University's Associate Vice President of Facilities Management Department who stated the following in an affidavit:

> In my position, I have access to a database that is currently maintained in the Facilities Management Department. This database provides information reports of all incidents that have occurred in the buildings located on the Lamar University campus, including incidents such as the one alleged by Deborah Hanington in the lawsuit against Lamar University. The database provides information reports from November 29, 2012 through November 16, 2020, at which time we switched to a new work order system. I have reviewed all the information reports and database pertaining to occurrences in Gentry Hall for the time period of September 14, 2006, through December 12, 2017, the time previous to the incident in this lawsuit. I find no record in the database of any report of a spill of any liquid substance, including water, leaks from any of the water fountains, water accumulating due to a leaking water fountain, or person slipping on water or a foreign substance in the hallways, lobby or common areas of Gentry Hall in the time previous to the incident in this lawsuit.

Lamar attached the deposition of Herman Sapp, in which he testified he has performed maintenance work for Lamar University since 2015, and that prior to Hanington's fall, he has never worked on a leaking fountain in Gentry Hall, he never noticed water accumulating under the water fountains in Gentry Hall and was not aware of any complaints about water accumulating under the fountain or spills in the common area.

Finally, Lamar also introduced the deposition of Derek Laird, testifying that he has worked for Lamar University as maintenance man since September 2015. He stated he was tasked with inspecting the fountain after Hanington slipped and fell. He stated that he did not find any evidence that the fountain had been previously leaking, and that the fountain had never been repaired for leaks before. He also took video documentation of his inspection, concluding that the fountain was not leaking under normal circumstances, explaining that when he investigated, he "put in way more volume water than is a normal use in order to make sure there [were] no leaks."

> It took a long while for it to start leaking. In normal cases, it would not -- we would not even know that it was leaking at all until I investigated it such as if it was in normal use, it would have never leaked before. It had to take a large volume of water in order to force it to leak or clog or fill up the drain as much as it did.

As discussed previously, although Hanington objected to Lamar's brief in support of its plea to the jurisdiction, and asked for the ability to replead, Hanington rejected the offer from Lamar to reset Lamar's hearing on its plea to the jurisdiction

22

which would have given Hannington more time to replead. Moreover, Hanington offered no evidence to support her claims or to contest Lamar's evidence that established it had no actual or constructive knowledge of the fountain leaking or causing water to pool or cause a dangerous condition on the floor.

Accordingly, we find that the trial court's denial of Lamar's plea to the jurisdiction was improper as Hanington failed to demonstrate evidence of a premises defect claim and waiver under the TTCA to overcome Lamar's sovereign immunity. We sustain Lamar's second issue.

## IV. Issue Three

In its third issue, Lamar argues that the trial court erred in denying its plea to the jurisdiction because Hanington cannot proceed on her general negligence claim, because she has made a premises defect claim.

The Texas Supreme Court stated in *Miranda* that "[t]he Tort Claims Act's scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in section 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property." *Miranda*, 133 S.W.3d at 233. The Texas Supreme Court explained that if an allegation establish the cause of injuries is related to the cause of action for injuries resulting from a condition or use of tangible property, to allow a plaintiff to characterize premises defect claims as claims caused by a negligence

23

condition would "render the Legislature's heightened requirements for premises defect claims meaningless." *Id.*

In her first amended petition, Hanington argues the following regarding negligence:

> Plaintiff would show that the incident in question and her resulting injuries and damages were brought about and proximately caused by the negligence of Defendant through the acts and omissions of one or more of its agents, servants and/or employees. Plaintiff paid for the use of the dormitory premises and Defendant owed Plaintiff the duty owed to an invitee. Such duty requires Defendant to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which Defendant was or reasonably should have been aware. Allowing a water fountain to leak onto the floor of the entrance hallway of the dormitory posed an unreasonable risk of harm. Defendant knew or reasonably should have known of the dangerous condition. Defendant had a duty to make the premises in question free of such hazards before inviting paying residents such as Plaintiff to use the dormitory. Defendant failed to exercise ordinary care to protect Plaintiff and other residents from the danger by failing to adequately monitor the water fountain, including the use of the water fountain, failing to warn Plaintiff of the dangerous condition, and/or failing to remove the dangerous condition.

Hanington does not dispute that her negligence claim is a premises defect claim in either her pleadings or in her brief to this Court, and she labeled her claim as a "premises defect claim" in her first amended petition. Additionally, our review of her petition shows that Hanington asserts that she paid for the use of the premises and therefore was an invitee. She argues that this creates a duty of ordinary care, Lamar should have been aware of the dangerous condition, and she alleges that Lamar failed to exercise ordinary care to protect her or its residents, including

24

monitoring the fountain or warning of the dangerous condition. Her petition contains the elements of a premises defect claim. *See Daenen*, 15 S.W.3d at 99 (discussing the elements of a premises defect claim); *Miranda,* 133 S.W.3d at 233. Therefore, we also sustain Lamar's final issue.

## V. Conclusion

Having sustained Lamar's first, second and third issues, we reverse the judgment of the trial court denying its plea to the jurisdiction and dismiss Hanington's claim.

REVERSED AND RENDERED.

_____
JAY WRIGHT
Justice

Submitted on April 8, 2022
Opinion Delivered March 23, 2023

Before Golemon, C.J., Johnson and Wright, JJ.

25