In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00447-CV
_____

**ALICIA VALENTINE, Appellant**

**V.**

**ASA HOLDINGS REAL ESTATE MANAGEMENT,
ASA HOLDINGS, LP, MOHAMMED ALI AND
SULTANA MUNNAZER, Appellees**

_____

**On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-199,856**
_____

**MEMORANDUM OPINION**

Appellant Alicia Valentine ("Appellant" or "Plaintiff") appeals the trial court's grant of a summary judgment in favor of Appellees ASA Holdings Real Estate Management, ASA Holdings, LP, Mohammed Ali, and Sultana Munnazer (collectively "Appellees" or "Defendants"). We affirm.

1

## Background

Valentine alleges that she fell on the walkway into the building located at 155 Interstate 10 in Beaumont, Texas. She alleged in her Original Petition that she fell due to the concrete on the premises being in an "unreasonably dangerous condition," and that the Defendants owned and operated the premises and failed to warn of the condition or make it reasonably safe. In her deposition, Valentine testified that she had a doctor's appointment that day and her doctor's office is in the office building at 155 Interstate 10 in Beaumont, Texas. She claims that when she was walking from the parking lot into the building, she stepped on a piece of concrete that shifted and she fell forward and hurt her knees. According to Valentine, she was an invitee on the premises where the incident occurred, and the Defendants owed her a duty to exercise ordinary care to inspect the premises, make and keep the premises safe, and to warn of dangers. Valentine argued that Defendants knew or should have known that the condition of the concrete on the premises created an unreasonable risk of harm to invitees; knew or should have known the condition created a risk that invitees would be injured; failed to exercise ordinary care to reduce or eliminate the risk; and failed to warn invitees, including Valentine. Valentine sought damages for past and future medical expenses, physical impairment, physical pain, mental

2

anguish, disfigurement, and loss of earning capacity in an amount over $100,000 but less than $200,000.

Defendants filed an answer asserting a general denial and affirmative defenses. Thereafter, Defendants filed a traditional and no-evidence motion for summary judgment. Defendants included as an exhibit a transcript of Valentine's deposition testimony. Defendants argued they were entitled to summary judgment because:

> . . . there is no evidence: (1) that the alleged condition posed an unreasonable risk of harm to Plaintiff; (2) that Defendants had actual knowledge of the alleged dangerous condition prior to the time Plaintiff fell and injured herself; or (3) that Defendants had prior constructive knowledge of the alleged dangerous condition—i.e., that such condition existed for such a length of time that Defendants, in the exercise of ordinary care, should have discovered it.

In her response Valentine argued that "[a] reasonably careful inspection by Defendants would have revealed the unreasonably dangerous condition[.]" Valentine further argued that "Defendants allowed the piece of concrete to remain in disrepair long enough for the concrete to become unattached from the other concrete and the underlying ground and/or to rest unevenly on the underlying ground." Valentine argued that "[i]t was foreseeable to Defendants that the piece of unstable and detached concrete in the walkway to a professional office building

3

would move when stepped on and that someone might fall due to the piece of concrete moving under foot."

Valentine alleged in her response that "Defendants have failed to conclusively show . . . that they lacked pre-incident constructive or actual knowledge of the condition and its danger[.]" Valentine also argued that "if Defendants had adequately inspected the area, then they would have discovered the unstable condition of the piece of concrete." Valentine argued that the condition was "akin to an unmarked trap door[.]" And, she argued that "[f]act questions exist."

She also attached an affidavit to her response.[1] In her affidavit, Valentine stated that the incident occurred as she was entering the office building for a doctor's appointment. Valentine alleged she stepped on a piece of concrete that appeared level and flush to the ground, but that as she stepped on it, the concrete shifted and threw her forward, and she fell and skinned her knees and hands. According to Valentine, it was only after she fell that she realized the piece of concrete onto which she had stepped was detached and had separated from the adjacent concrete and created "an un-stable walking surface." Valentine did not know whether other people had fallen due to the "unstable piece of concrete" and she had not heard of anyone

---

[1] Also attached to her response were certain billing records from the City of Beaumont for emergency medical services and the affidavit of her attorney.

4

slipping, tripping, or falling in the area. In her affidavit, Valentine made the following allegations related to the condition of the concrete:

- "The piece of concrete on which I stepped was laying flush in the ground, as I stated in my deposition; it was not lifted up. The walking surface of the piece of concrete on which I stepped appeared to be a level walking surface; not lifted up. . . . At the time of the incident and before, I could not tell or appreciate that the piece of concrete on which I stepped was not attached horizontally to the surrounding concrete or that the ground under the piece of concrete was not flush to the bottom of the piece of concrete on which I stepped. At the time of the incident and before, I could not tell or appreciate that the piece of concrete on which I stepped would throw my body when I stepped on it like being shot out of a catapult."

- "Only after I fell I realized that the piece of concrete on which I stepped was not attached to the other concrete next to it and that the bottom of the piece of concrete on which I stepped was not totally attached to or not resting evenly on the underlying ground. After I fell, I realized that over time, the adjacent concrete and the ground under the piece of concrete had separated from the side and bottom of the piece of concrete on which I stepped."

- "Prior to the incident, I could not tell that the piece of concrete on which I stepped was not attached to the other concrete or to the ground itself or that it was not resting evenly on the underlying ground."

- "Before the date of the incident, I did not know that the piece of concrete was unstable for walking purposes at the location of the incident. Prior to and at the time of the incident, the unstable condition of the piece of concrete was not easily perceptible to me; it just appeared as a level walking surface as I looked ahead of me."

- "[A]t the time of the incident, I could not and did not perceive that the location of the incident contained a piece of concrete that was unattached to the other concrete and to the ground itself."

- "At the time of the incident, the piece of concrete appeared to me to be a flat, stable walking surface from facts within my present or past knowledge, as I was not aware that the concrete was not attached to the other concrete or to the ground itself."

- "Before the incident, the Defendants had not made the unstable piece of concrete at the location of the incident reasonably safe for stepping and the Defendants and no one else had not warned me of the unattached nature and condition of the piece of concrete at the location of the incident."

- "Prior to the incident, I had not slipped, tripped or fallen on the subject unattached piece of concrete at the location of the incident and I had not seen anyone slip, trip or fall in the area of the incident and I had not heard of anyone slipping, tripping or falling in the area of the incident."

In her deposition, Valentine testified that she had been going to see that doctor once a month, every month, she had been to his office once in "January, February, March, April, May, June, July[,]" and she fell in October. Valentine stated that, at the time of her fall, she was wearing "clear slippers[]" with a strap between the big toe and second toe and no strap on the heel. In her deposition, Valentine described her fall:

> I fell for -- I broke my fall forward. It had a piece of concrete that was broken that was shifted and when I stepped on it, . . . it threw me and that's how I flew -- that's how I end up falling forward and skinning my knees and -- and my hands.

6

Valentine testified that she fell forward and broke her fall with her hands. According to Valentine, the broken piece of concrete was lying flush to the ground.

Defendants filed a reply to Valentine's response and argued that Valentine failed to produce more than a scintilla of evidence on more than one of the four elements of her premises liability claim. Defendants argued that there is no evidence: (1) that the alleged condition posed an unreasonable risk of harm to Plaintiff; (2) that Defendants had actual knowledge of the alleged dangerous condition prior to the time Plaintiff fell and injured herself; or (3) that Defendants had prior constructive knowledge of the alleged dangerous condition, i.e., that such condition existed for such a length of time that Defendants, in the exercise of ordinary care, should have discovered it. The Defendants also argued that Valentine failed to produce sufficient evidence to raise a genuine issue of material fact regarding whether the condition posed an unreasonable risk of harm and "[n]one of the statements made in Plaintiff's Affidavit regarding the alleged dangerous condition (i.e., the loose concrete) prove that such condition did in fact pose an unreasonable risk of harm to Plaintiff." Defendants argued that Valentine had presented no evidence that the instability of the concrete rose to the level of an unreasonable risk of harm and that expert testimony was necessary on this point. According to Defendants, Valentine's allegation that the concrete was unstable amounted to mere surmise or suspicion.

The trial court granted Defendants' Motion for Traditional and No-Evidence Summary Judgment and ordered that all claims brought by Valentine against the Defendants should be dismissed. Valentine filed a motion for new trial, which was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c).

## Issues

In three issues, Valentine argues the trial court erred in granting Defendants' motion for summary judgment because: (1) "Defendants did not meet their burden, as a matter of law, regarding unreasonable risk of harm and Defendants' constructive knowledge of the alleged dangerous condition[]"; (2) she raised fact issues regarding unreasonable risk of harm and Defendants' constructive knowledge of the alleged dangerous condition; and (3) there are disputed fact issues regarding unreasonable risk of harm and Defendants' constructive knowledge. Appellees argue that Valentine failed to present more than a scintilla of evidence that the condition of the premises posed an unreasonable risk of harm or that Appellees had constructive knowledge of the condition.

## Standard of Review

Where, as here, a defendant moves for both traditional and no-evidence summary judgment and the trial court grants summary judgment without stating its grounds, we first review the trial court's decision as to the no-evidence motion for

8

summary judgment. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Martinez v. Leeds*, 218 S.W.3d 845, 849 (Tex. App.—El Paso 2007, no pet.). If the non-movant failed to produce more than a scintilla of evidence raising a genuine fact issue of material fact on one or more of the challenged elements of her claim, we need not address whether traditional summary judgment was proper. *See Ridgway*, 135 S.W.3d at 600; *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 662 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

We review summary judgment orders de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under Rule 166a(i) a party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). The trial court may grant a no-evidence motion for summary judgment unless the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the elements challenged by the motion. *See id.*; *Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ridgway*, 135 S.W.3d at 601.

If "'the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence.'" *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). In determining whether the nonmovant has produced more than a scintilla of evidence, we view the evidence in the light most favorable to the nonmovant and disregard all contrary evidence and inferences. *Id.*; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

Here, Appellees alleged there was no evidence Appellees had actual or constructive knowledge of any unreasonably dangerous condition on the premises and failed to make the premises safe or failed to warn Valentine of the condition. Because Appellees alleged there was no evidence of these essential elements of a premises liability claim, the burden shifted to Valentine to identify more than a scintilla of evidence raising a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i).

### Premises Liability

In Texas, a landowner owes a duty to use reasonable care to make and keep its premises safe for business invitees. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997). A landowner is not an insurer of the safety of his guests and liability may not be imposed merely because someone is injured. *Austin*

10

*v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015); *see also Thoreson v. Thompson*, 431 S.W.2d 341, 344 (Tex. 1968) ("the fact an accident happens is no evidence that there was an unreasonable risk of such an occurrence[]").

The parties agree that Valentine asserted a premises liability claim. *See Austin*, 465 S.W.3d at 216 ("When an injury arises from a premises condition, it is often the case that any resulting claim sounds exclusively in premises liability[.]"). The elements of a cause of action for a premises liability claim are: (1) the existence of a condition of the premises creating an unreasonable risk of harm, (2) the landowner knew or should have known of the existence of the condition, (3) the landowner failed to use reasonable care to reduce or eliminate the risk by rectifying or warning of the condition, and (4) such failure was a proximate cause of plaintiff's injury. *Henkel v. Norman*, 441 S.W.3d 249, 251-52 (Tex. 2014); *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).

In premises liability cases, "the duty owed to the plaintiff depends upon the status of the plaintiff at the time the incident occurred." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005) (citing *M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 675 (Tex. 2004); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295-96 (Tex. 1983)). The parties agree that Valentine was an invitee. A property owner or occupier in a premises liability case owes an invitee a duty to use ordinary care to reduce or

11

eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier of land knows about or in the exercise of ordinary care should know about. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998); *Austin*, 465 S.W.3d at 202.

A condition is not unreasonably dangerous simply because it is not foolproof. *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408 (Tex. 2006).

> Many building materials will, over time, deteriorate and require repair or replacement. That does not necessarily mean that the owner or occupier has created a dangerous condition or that the owner has actual or constructive knowledge of a dangerous condition. For example, we know that asphalt roads will develop potholes over time and will require repair. That does not mean that asphalt roads constitute an unreasonable risk of harm from the day they are constructed.

*Daenen*, 15 S.W.3d at 101-02. "A condition is unreasonably dangerous if it presents an unreasonable risk of harm." *Pipkin*, 383 S.W.3d at 671. The extent to which a condition is unreasonably dangerous is ordinarily a fact question, but under some facts and circumstances, may be determined as a matter of law. *See id.* "'A condition presenting an unreasonable risk of harm is one in which there is such a probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen.'" *Reliable Consultants, Inc. v. Jaquez*, 25 S.W.3d 336, 341 (Tex. App.—Austin 2000, pet. denied) (quoting *Seideneck v. Cal Bayreuther & Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970)).

12

There is no definitive, objective test that may be applied to determine whether a specific condition presents an unreasonable risk of harm. *See Seideneck*, 451 S.W.2d at 754. When determining whether the harmful event that resulted from a condition was probable and foreseeable, courts often consider, among other things, evidence of other falls or injuries attributable to the same condition and evidence of some defective condition causing the fall; and, such evidence is probative but not conclusive. *See id.* Courts may consider (1) whether the condition was clearly marked, (2) the height of the condition, (3) whether injuries had occurred in the past, (4) whether other invitees had complained about the condition, (5) whether the condition was unusual, (6) whether the construction or placement of the condition would serve as a warning that the object presented a prohibited degree of danger, (7) whether the invitee had reasonable alternatives other than to go through the area where the condition was located, and (8) whether the condition met applicable safety standards. *See Martin v. Chick-Fil-A*, No. 14-13-00025-CV, 2014 Tex. App. LEXIS 1217, at \*\*8-10 (Tex. App.—Houston [14th Dist.] Feb. 4, 2014, no pet.) (mem. op.); *see also Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007) (holding pedestrian ramp was not unreasonably dangerous because it was outlined in yellow stripping, which was a common method to indicate elevation change); *Dietz v. Hill Country Rests., Inc.*, 398 S.W.3d 761, 767-68 (Tex. App.—San Antonio 2011, no

13

pet.) (holding that summary judgment was proper because there was no evidence of unreasonable risk of harm where condition—depressions in a sidewalk—had been present for eighteen years with no prior falls or complaints); *Farrar v. Sabine Mgmt. Corp.*, 362 S.W.3d 694, 701 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("Evidence of a similar injury or complaint caused by the condition is probative on the question of whether the condition posed an unreasonable risk of harm.").

Analysis

In this case, the only evidence on the condition of the broken concrete was Valentine's own affidavit wherein she described the concrete as "unstable[,]" "not attached[,]" and "laying flush in the ground," and her deposition testimony (with photo exhibits) wherein she described the concrete as "shifting back and forth." In her affidavit, Valentine denied knowledge of any prior incidents or falls in the same location.

Valentine's response to the Defendants' motion for summary judgment failed to present more than a scintilla of evidence about the condition to establish that it was an unreasonably dangerous condition. Valentine produced no evidence about how long the condition had existed, whether it had caused prior injuries or falls, whether the condition was unusual, whether the condition presented a prohibited degree of danger, whether Valentine had reasonable alternatives other than to go

14

through the area where the condition was located, and whether the condition met applicable safety standards. *See Martin*, 2014 Tex. App. LEXIS 1217, at \*\*8-10. In *Cohen v. Landry's Inc.*, for example, plaintiff Cohen alleged she was injured in a trip-and-fall accident due to an uneven sidewalk. *See* 442 S.W.3d 818, 820 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In response to Landry's no-evidence motion for summary judgment, Cohen produced opinion testimony of an expert who testified that Landry's failure to mark the uneven sidewalk or provide lighting increased the risk, the uneven sidewalk created a significant trip-and-fall hazard because elevation differences are difficult to perceive, and the uneven sidewalk did not meet applicable safety standards. *Id.* at 827-28. With respect to the premises liability claim, the court of appeals reversed the trial court's grant of summary judgment and explained that Cohen had presented more than a scintilla of probative evidence sufficient to raise a fact issue and overcome summary judgment on her premises liability claim. *Id.* at 828; *see also Hawk v. Paragon Inv. Corp.*, No. 07-97-0097-CV, 1997 Tex. App. LEXIS 6466, at \*\*5-6 (Tex. App.—Amarillo Dec. 16, 1997, no writ) (concluding that nonmovant's uncontroverted expert witness's opinion raised a fact issue that precluded summary judgment on whether the bathtub was unreasonably dangerous and whether Paragon should have known of the unreasonably dangerous condition).

Unlike *Cohen* and *Hawk*, Valentine presented no expert testimony about the condition, and she relied solely upon her own testimony about her fall and her own perception of the condition of the concrete. The fact that Valentine fell does not itself constitute evidence of an unreasonably dangerous condition. *See Mangham v. YMCA of Austin*, 408 S.W.3d 923, 928 (Tex. App.—Austin 2013, no pet.); *Bostick v. Metro Nat'l Corp.*, No. 14-04-00663-CV, 2005 Tex. App. LEXIS 6584, at *10 (Tex. App.—Houston [14th Dist.] Aug. 18, 2005, no pet.) (mem. op.) (concluding that claimant failed to produce evidence to defeat no-evidence summary judgment and rejecting inference that claimant's injuries were caused by dangerous condition merely because claimant fell). Valentine's conclusory allegation that the broken concrete was unreasonably dangerous is not sufficient to overcome the no-evidence summary judgment. *See Pipkin*, 383 S.W.3d at 670 ("Conclusory affidavits are not sufficient to raise fact issues because they are not credible or susceptible to being readily controverted.) (citing *Ryland Grp. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam)).

On this record, we conclude that Valentine failed to meet her burden in response to the no-evidence motion for summary judgment. She failed to provide more than a scintilla of evidence showing that the condition of the concrete was an unreasonably dangerous condition, which was an essential element of her claim. *See*

16

*Daenen*, 15 S.W.3d at 101. Accordingly, the trial court properly granted summary judgment dismissing her claim on no-evidence grounds. *See* Tex. R. Civ. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002) (quoting Rule 166a(i) that trial court must grant no-evidence motion unless nonmovant produces summary judgment evidence that raises genuine issue of material fact on each challenged element). Because Valentine presented no evidence that the condition of the concrete was an unreasonably dangerous condition, we need not determine whether she presented more than a scintilla of evidence on the other elements of her claim. *See* Tex. R. App. P. 47.1. In addition, because Valentine failed to produce more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements of her claims, we need not address whether traditional summary judgment was proper. *See Ridgway*, 135 S.W.3d at 600. We also overrule Valentine's first issue—that "Defendants did not meet their burden, as a matter of law, regarding unreasonable risk of harm and Defendants' constructive knowledge of the alleged dangerous condition[,]"—because in a no-evidence motion for summary judgment, the burden is on the nonmovant-plaintiff to put forward evidence on each element of her claim. *See id.*

We overrule all of Appellant's issues on appeal and affirm the trial court's judgment.

17

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on February 12, 2020
Opinion Delivered March 12, 2020

Before Kreger, Horton and Johnson, JJ.